FRUGÉ, Judge.
Plaintiff, Franklin L. Bryant, instituted this action to establish the boundary between his property and the adjoining prop *567 erty owned by defendant, Audie E. Harris. Plaintiff alleged that the boundary separating his property from the defendant’s was no longer extant, or, alternatively, was wrongly placed and that an amicable attempt to fix the boundary in conjunction with the defendant had failed. By stipulation between the parties, an actual formal survey and proces verbal were dispensed with and a surveyor’s plat used in lieu thereof. The trial court rendered judgment establishing the boundary in accordance with the surveyor’s plat, and from this determination the defendant has appealed. We affirm.
Defendant-appellant asserts that the trial court erred in failing to recognize an existing fence as the eastern boundary of the plaintiff’s property. Plaintiff-appellee answered the appeal and asserts the validity of the trial court’s determination on the merits, but prays for a reversal as to the trial court’s division of court costs equally between the parties.
Insofar as the question of the boundary’s location is concerned, we are faced with the issue of manifest error on the part of the trial court. The properties in dispute comprise a portion of the Llanada Plantation Subdivision, in Section 39, of Cata-houla Parish, Lousiana. This subdivision resulted from federal government distribution of farm lands under a program aimed at fostering small farm production.
Plaintiff’s property was originally purchased by Bunion H. Posey on March 3, 1941. Mr. Posey sold the property to Genie Walker on July 16, 1942, having never taken possession of the place. On November 6, 1962, plaintiff purchased from E. Denzell Humble the property described as follows:
“Lot 12 of the plat and subdivision of the Llanada Plantation as shown on plat and survey recorded in CB 46, page 508 of the records of Catahoula Parish, Louisiana, more particularly described as follows, to-wit:
“Begin at the southwest corner of Section 39, T7NR6E, and run thence South 82 deg. East a distance of 45 chains for the point of beginning; run thence North 15 deg. 30 min. East a distance of 32 chains; thence South 82 deg. East a distance of 11 chains; thence South 15 deg. 30 min. West a distance of 32 chains; thence North 82 deg. West a distance of 11 chains to the point of beginning, containing 35.02 acres, more or less, in Section 39, T7NR6E, and being the same lands conveyed by Genie Walker to Roy Ashley by deed dated February 19, 1955, recorded in CB 65, page 516, and being the same lands conveyed by Roy Ashley to this grantor by deed dated March 18, 1958, recorded in CB 69, page 532.”
At the trial of this matter, crucial evidence was presented by James H. Tooke, a registered civil engineer and land surveyor. He testified that the boundary line formerly established by the survey of Frank C. Green fixed the dividing line between the properties of plaintiff and defendant. Mr. Tooke could find no evidence which would support a change in the boundary line as delineated by the survey of Mr. Green.
In the main, defendant has attempted to acquire property beyond his own title by application of Louisiana Civil Code Article 852, which authorizes prescription beyond one’s own title by 30 years’ possession. Defendant concedes that his entire case is based upon the existence of a fence positioned west of the plaintiff’s property line, which is deemed by defendant to have existed as a proper boundary in excess of 30 years. Mr. Tooke, in elaborating upon his survey findings, stated that the existing fence ran northerly in a generally correct line, but varied from its correct course about mid-way in the plaintiff’s property. The greatest deviation was some 215 feet to the west of the true property line. The disputed area lies between the existing fense and the true property line, comprising an area of some 5}/£ acres.
*568 In support of his position, defendant has relied upon testimony of certain witnesses in establishing an alleged 30 years-plus existence of a fence along the same line occupied by the existing fence. Mr. Hoover Humble, a neighbor, testified that there was a fence extant on the east end of plaintiff’s property in the year 1940 or 1941, at the time he moved nearby, and that that fence had been in there 'for “some time”. He further stated that the fence had been recognized as the boundary by everybody who ever owned the property. The defendant testified that he recognized this fence as the boundary. Mr. Leo Armstrong, defendant’s ancestor in title, testified that he built a fence in 1954 along the old fence line, which was more down than up at that time.
In support of the plaintiff’s position, and heavily relied upon by the trial court in its judgment, was the testimony of Mr. Genie Walker. Mr. Walker owned the plaintiff’s property from 1942 and for a period of from 10 to 12 years. To the best of his recollection, he built the existing fence between 1942 and 1946 and did not build it on the true property line. He testified that he erected the fence west of the true line in order to skirt a slough, or low place, which was usually under water and detrimental to the wire fencing material used in construction of the fence.
Mr. Walker stated that there was no other fence positioned along the original survey line at the time he constructed his fence. At no time did he intentionally abandon his property which was not enclosed within the fence he built. He also stated that Mr. Armstrong did not build a fence while he (Walker) was still the owner of the adjacent property.
As to the existence of the older fence, about which much testimony was adduced, Mr. Walker stated that this fence was present on the property at the time that he commenced to live there. He explained that the old fence had been part of the Llanada Plantation, and was evidently used to divide areas of the plantation itself.
We believe the following paragraphs excerpted from the written reasons for judgment of the trial court to be fully supported by the record, and have consequently adopted them as our own.
“It would appear to this Court that the testimony of Genie Walker was the most authoritative. He testified in essence that there was never an agreement changing the boundary made between him and either Wilder or Armstrong who were the adjoining owners during his tenure on the property now owned by plaintiff. He testified that he had built a fence to keep his hogs in, but that he did not build it on the boundary line nor did he and Wilder agree to use this fence as a legal boundary. He also testified that there was some old fencing in the area, but the gist of his testimony seems to indicate that this fencing was done by some former owner of Llanada before it was divided by the F.H.A. The Court surmises that it was part of a fence to keep the cattle and hogs which ran in the woods off of Llanada’s crop land. In any event this Court finds no evidence that this fence was ever intended as a boundary between these estates now in litigation.
“Therefore, having found nothing in the record or from the witnesses’ testimonies that there was ever an agreement between any of the prior owners or between the present owners to establish a boundary other than the true survey line, and the record and testimony also being void of any evidence that would tend to support the establishment of a boundary by prescription, this Court must rule that the boundary as established between these two estates by the Tooke survey shall stand and should be adjudged to be the true or legal boundary.”
Plaintiff-appellee asserts by answer that the trial court abused its discretion in assessing court costs equally between the parties. It is plaintiff’s contention that where amicable negotiations failed, plain *569 tiff merely sought a judicial recognition of that which was rightfully his. The pertinent part of La.C.C.P. Article 1920 provides :
“. . . except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.”
The validity of the trial court’s assessment of costs should be determined on a case-by-case basis. Our jurisprudence fully supports a division of court costs between the parties where the equities of the case demand such a result. See Johnson v. Marshall, 202 So.2d 465 (La.App. 1st Cir. 1967). The facts of the instant case provide a valid basis for the division of court costs. It is apparent that there was an understandable dispute relative to the ownership of property and the establishment of a proper boundary between adjacent landowners.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be assessed against the defendant-appellant.
Affirmed.